UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM CUNNINGHAM, *et al.*,

     Plaintiffs,                           Case No. 21-cv-10781
                                       Hon. Matthew F. Leitman

v.

FORD MOTOR COMPANY,

     Defendant.

_____/

## ORDER (1) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF No. 29) AND (2) STAYING CLAIMS BROUGHT BY PLAINTIFFS TRI-STATE COLLISION, LLC AND JOEL WIESS

In this putative class action, four named Plaintiffs bring claims against Defendant Ford Motor Company based upon an alleged defect in the tailgate latch release switch of their Ford vehicles. Ford has now moved to compel two Plaintiffs, Tri-State Collision, LLC ("Tri-State") and Joel Weiss, to arbitrate their claims. Ford argues that Tri-State and Weiss are required to arbitrate under the terms of Vehicle Retail Installment Contracts that Tri-State and Weiss entered into with the dealers who sold them their vehicles (the "Sales Contracts"). Tri-State and Weiss counter that the Court should not compel them to arbitrate their claims against Ford pursuant to the Sales Contracts because Ford is not a party to those contracts.

While the question of whether a party to a civil action may be compelled to arbitrate is normally one for the Court to decide, that is not the case here. The arbitration provision in the Sales Contracts clearly delegates to the arbitrator the authority to decide questions of arbitrability. And under settled Sixth Circuit law, in light of that delegation, an arbitrator must decide whether Ford, as a non-party to the Sales Contracts, may compel Tri-State and Weiss to arbitrate their claims. Accordingly, the Court **GRANTS** Ford's motion to compel arbitration (ECF No. 29) and **STAYS** Tri-State's and Weiss' claims.

## I

## A

In March of 2018, Tri-State "purchased a new 2018 F-250 [truck] from Money Ford in Abbeville, Alabama." (First Am. Compl. at ¶31, ECF No. 27, PageID.629.) On March 1, 2021, Weiss "purchased a new 2021 F-450 [truck] from Al Packer Ford in West Palm Beach, Florida." (*Id.* at ¶40, ECF No. 27, PageID.631.) When Tri-State and Weiss purchased their trucks, they each signed a Sales Contract with the dealership that sold them their vehicles. (*See* Weiss Sales Contract, ECF No. 29-2; Tri-State Sales Contract, ECF No. 29-3.)

The Weiss Sales Contract and the Tri-State Sales Contract are virtually identical. They describe, among other things, the price of the vehicles, the payment terms, and the responsibilities of the parties. (*See id.*)

2

Each Sales Contract also states that the selling dealership will "assign" its rights under the contract to Ford Motor Credit Company LLC (the "Assignment"). (Weiss Sales Contract, ECF No. 29-2, PageID.1072; Tri-State Sales Contract, ECF No. 27-3, PageID.1080.)  The Assignment provides that as the assignee, Ford Motor Credit "will then have all [the dealership's] rights, privileges, and remedies" under the Sales Contracts. (*Id.*)

Finally, both Sales Contracts include a provision allowing either party to compel arbitration of certain claims (the "Arbitration Provision").  The Arbitration Provision states in relevant part that it is "subject to the Federal Arbitration Act" (the "FAA") and that:

> Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court. *Either you or Creditor* ("us" or "we") (each, a "Party") *may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration*. Neither party waives the right to arbitrate by first filing suit in a court of law. Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory or otherwise; 2) *Claims regarding the interpretation, scope, or validity of this provision, or arbitrability of any issue except for class certification*; 3) Claims between you and us, your/our employees, agents, successors, assigns, subsidiaries, or affiliates; 4) Claims arising out of or relating to your application for credit, this contract, or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this contract.

(Weiss Sales Contract, ECF No. 29-2, PageID.1071; Tri-State Sales Contract, ECF No. 29-3, PageID.1079; emphasis added.)

From this point forward, the Court will use the term "Delegation Clause" to refer to the two italicized portions of the Arbitration Provision quoted above which, taken together, state that either party to the Sales Contract may elect to have "decided by arbitration" any "[c]laims regarding the interpretation, scope, or validity of this provision, or arbitrability of any issue except for class certification."

**B**

On April 7, 2021, Weiss, Tri-State, and two other named Plaintiffs filed a putative class action against Ford in this Court. (*See* Compl., ECF No. 1; First Am. Compl., ECF No. 27.)  According to Plaintiffs, their vehicles suffer from a defect that causes their "tailgates [to] unintentionally open, including while [their] vehicle[s are] in motion" (the "Tailgate Defect"). (First Am. Compl. at ¶3, ECF No. 27, PageID.622.)  Plaintiffs say that the "Tailgate Defect presents a serious risk of harm to occupants and others sharing the road.  First, the Tailgate Defect can result in loss of unrestrained cargo, increasing the risk of injury or crash. Second, the Tailgate Defect can cause the tailgate to release and contact towed trailers, damaging both the tailgate and trailer. [Finally], the Tailgate Defect can reduce the clearance between the [Plaintiff's vehicle] and a towed trailer, limiting the vehicle's range of mobility and increasing the risk of injury or crash." (*Id.* at ¶6, PageID.622.)

4

Plaintiffs bring several statutory and common-law claims against Ford arising out of the Tailgate Defect.

## C

On November 24, 2021, Ford moved to compel Tri-State and Weiss to arbitrate their claims pursuant to the Arbitration Provision. (*See* Mot. to Compel Arbitration, ECF No. 29.)  Ford primarily argued that (1) the claims by Tri-State and Weiss fell within the Arbitration Provision and (2) it (Ford) could compel Tri-State and Weiss to arbitrate their claims even though it was not a party to their Sales Contracts. (*See id.*)  In a one-sentence footnote to its motion, Ford also argued in the alternative that in light of the Delegation Clause, an arbitrator, rather than the Court, should decide whether the claims by Tri-State and Weiss fell within the Arbitration Provision and whether Ford could enforce that provision. (*See id.* at n.2, PageID.1058.)

Weiss and Tri-State opposed Ford's motion. (*See* Opp. to Mot. to Compel Arbitration, ECF No. 32.)  They insisted, among other things, that because Ford is not a party to the Sales Contracts (and thus, not a party to the Arbitration Provision), it could not compel arbitration. (*See id.*)  They also contended that the Court, not the arbitrator, should decide the question of arbitrability. (*See id.* at n.2, PageID.1141.)

Ford then filed a reply brief in which it argued at greater length that the arbitrator, rather than the Court, should decide whether Ford could enforce the

Arbitration Provision and whether the claims by Tri-State and Weiss were subject to arbitration. (*See* Ford Reply Br., ECF No. 36, PageID.1547-1549.)

The Court held a hearing on Ford's motion on June 15, 2022.  At that hearing, the Court and counsel spent a considerable amount of time discussing the issue of who should decide whether Ford could compel Tri-State and Weiss to arbitrate their claims. (*See* 6/15/2022 Hr'g Tr., ECF No. 50.)  Following the hearing, in order to give both parties a full opportunity to weigh in on that issue, the Court ordered the parties to file supplemental briefs addressing in more detail Ford's argument that "the question of whether Ford may invoke the [Arbitration Provision] here is a question to be decided in the first instance by the arbitrator." (Order, ECF No. 49, PageID.1683-1684.)  The parties now have filed their supplemental briefs (*see* Supp. Brs., ECF Nos. 51, 52), and the Court is set to rule on the motion.

## II

Under the FAA, 9 U.S.C. § 1 *et seq.*, "[a] written agreement to arbitrate disputes arising out of a transaction in interstate commerce shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Hergenreder v. Bickford Senior Living Group, LLC*, 656 F.3d 411, 416 (6th Cir. 2011) (quoting 9 U.S.C. § 2).  The FAA "manifest[s] a liberal federal policy favoring arbitration agreements" *id.* (internal quotation marks omitted), and it "was designed to override judicial reluctance to enforce arbitration

agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).   Pursuant to the FAA, any "doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration." *Id.* at 715.

"Generally, when asked to compel arbitration under a contract, a court determines whether the parties agreed to arbitrate their dispute." *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021).  "The FAA, however, allows parties to agree that an arbitrator, rather than a court, will determine ''gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Id.* (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).  "Such an agreement, commonly known as a delegation clause, requires clear and unmistakable evidence that the parties agreed to have an arbitrator decide arbitrability." *Id.* (internal quotation marks and citation omitted).  "A valid delegation clause precludes courts from resolving any threshold arbitrability disputes." *Id.*   Indeed, as the Sixth Circuit recently explained, "[t]he practical effect of a delegation provision is that if arbitrability is challenged, then the arbitrator, not the court, must address the challenge. Such a challenge may come in the form of a coverage challenge or as an enforceability challenge. Regardless, the outcome is the same: a valid delegation provision removes judicial purview and

transfers the question of arbitrability to an arbitrator." *Becker v. Delek US Energy, Inc.*, --- F.4th ---, 2022 WL 2448287, at *2 (6th Cir. July 6, 2022).

"Only a specific challenge to a delegation clause brings arbitrability issues back within the court's province." *Swiger*, 989 F.3d at 505. *See also Rent-A-Center*, 561 U.S. at 72 (explaining that "unless [a party] challenge[s a] delegation provision specifically," then "any challenge to the validity of [an arbitration agreement] as a whole" must be left for the arbitrator). In other words, "[a]ttacking a delegation provision as invalid turns the question away from arbitrability of gateway issues to the validity of an arbitrator's authority to arbitrate arbitrability. [....] If the validity of a delegation provision is challenged in response to a motion to compel arbitration, then the court, rather than the arbitrator, must address those challenges." *Becker*, --- F.4th ---, 2022 WL 2448287, at *2.

## III

### A

The Court begins with a threshold question: does the Arbitration Provision, through the Delegation Clause, delegate questions of arbitrability to the arbitrator? The Court agrees with Ford that it does.[1]

---

[1] As noted above, Ford's argument that the Delegation Clause delegates questions of arbitrability to the arbitrator first appeared in a footnote in Ford's motion to compel arbitration. Ordinarily, raising an argument in a perfunctory manner in a one-sentence footnote is not sufficient. *See*, *e.g.*, *In re Anheuser-Busch Labeling Marketing and Sales Practices Litigation*, 644 F. App'x 515, 529 (6th Cir. 2016)

The Delegation Clause provides "clear and unmistakable evidence that the parties agreed to have an arbitrator decide" arbitrability. *Swiger*, 989 F.3d at 505. As quoted above, the Delegation Clause first states that either party may compel the other to have "any Claim related to this contract decided by arbitration." (Weiss Sales Contract, ECF No. 29-2, PageID.1071; Tri-State Sales Contract, ECF No. 29-3, PageID.1079.)  It then provides that the "Claims" to be "decided by arbitration" include "Claims regarding the interpretation, scope, or validity of [the Arbitration Provision] *or arbitrability of any issue* except class certification." (*Id.*; emphasis added.)  In *Swiger*, the Sixth Circuit held that nearly identical language and structure constituted "clear[] and unmistakabl[e]" evidence that the parties intended to delegate questions of arbitrability to the arbitrator. *Swiger*, 989 F.3d at 506.  The contract in *Swiger* first provided that "You and Plain Green agree that any Dispute (defined below) will be resolved by Arbitration." (Swiger Arbitration Agmt., E.D. Mich. Case No. 19-cv-12014, ECF No. 1-3, PageID.16.)  It then defined "Dispute" to include (1) "any claim or controversy of any kind between you and Plain Green

---

(explaining that raising "[a]n observation in a footnote, for example, is not sufficient" to preserve an argument).  But here, as explained above, the Court discussed the delegation issue with both parties at the hearing on Ford's motion and allowed both parties to submit supplemental briefs addressing the issue at length. (*See* Order, ECF No. 49; Supp. Brs., ECF Nos. 51, 52.)  Under these circumstances, given that both parties have had a full and fair opportunity to brief the delegation issue for the Court, the Court concludes it may properly consider Ford's delegation argument.

or otherwise involving this Agreement or the Loan" and (2) "any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate." (*Id.*)   The Sixth Circuit concluded that this language "clearly and unmistakably show[ed] that the parties agreed to arbitrate issues of arbitrability." *Swiger*, 989 F.3d at 506.   The same is true with respect to Delegation Clause here. Indeed, another Judge of this court recently held that the language in the Delegation Clause "clearly and unmistakably show[ed] an intent to arbitrate issues of arbitrability." *Lyman v. Ford Motor Co.*, 2022 WL 856393, at *3 (E.D. Mich. Mar. 22, 2022).

Moreover, the fact that the Delegation Clause expressly provides that only one type of claim – a claim related to "class certification" – need *not* be "decided by arbitration" underscores that all other claims, including those related to arbitrability, must be presented to an arbitrator.

Weiss and Tri-State counter that there is not "clear and unmistakable" evidence of an intent to delegate questions of arbitrability to the arbitrator because "there is no stand-alone delegation clause" and because the Delegation Clause here is "subsumed within the same provision that requires arbitration." (Weiss and Tri-State Supp. Br., ECF No. 51, PageID.1788-1790.)  But Weiss and Tri-State have not cited any decision from the Sixth Circuit or any other circuit court of appeals that holds a delegation clause must stand alone in order to "clearly and unmistakably"

evidence an intent to delegate questions of arbitrability to an arbitrator.  And *Swiger* confirms that there is no such requirement in this Circuit.  There, the Sixth Circuit found that delegation language clearly evidenced the parties' intent to delegate questions of arbitrability to the arbitrator even though that language did not stand alone – and even though that language appeared in a broader arbitration provision that was structured just like the Arbitration Provision in this case. *See Swiger*, 989 F.3d at 506.  *Swiger* is fatal to Tri-State and Weiss' argument that because the Delegation Clause does not stand alone, it does not "clearly and unmistakably" evidence an intent to delegate questions of arbitrability to the arbitrator.

For all of these reasons, the Court concludes that the Delegation Clause provides clear and unmistakable evidence of an agreement to delegate questions of arbitrability to the arbitrator.

## B

Because the Delegation Clause delegates questions of arbitrability to the arbitrator, it is for the arbitrator, not this Court, to decide whether Ford, as a non-party to the Sales Contracts, may compel Tri-State and Weiss to arbitrate their claims.  The Sixth Circuit's decision in *Swiger* compels that conclusion.

In *Swiger*, the plaintiff "accepted a \$1200 loan at an interest rate exceeding 350%." *Swiger*, 989 F.3d at 503.  The plaintiff "also agreed to an arbitration provision, providing that any dispute ... related to [her loan] agreement [would] be

resolved through binding arbitration." *Id.* (internal quotation marks omitted).  As explained above, the arbitration provision further delegated to the arbitrator "any issue concerning the validity, enforceability, or scope of [plaintiff's loan] or this Agreement to Arbitrate." *Id.*  Several months later, the plaintiff claimed that her loan violated both Michigan and federal law, and she sued multiple defendants, including certain non-parties to her loan.  One of the defendants who was not a party to the loan then "filed a motion to stay the case in favor of arbitration. He argued that because [the plaintiff] agreed through a 'delegation clause' to arbitrate issues 'concerning the validity, enforceability, or scope' of the agreement, the court should stay the proceedings and compel arbitration of even threshold arbitrability questions." *Id.* at 504.  The district court denied the defendant's motion "without mentioning the delegation clause." *Id.* at 506.

On appeal to the Sixth Circuit, the defendant again argued that pursuant to the delegation clause, the arbitrator, not the court, had to decide whether the defendant, as a non-party to the contract, could compel the plaintiff to arbitrate the claims in question. *See id.* at 507. The plaintiff countered that whether the defendant could compel him (the plaintiff) to arbitrate was a "question of standing" that had to be decided by the court. *Id*. at 506–07.  The Sixth Circuit was "persuade[d]" by the defendant's argument.  In a passage worth quoting at length, the court explained:

As explained by one district court within our circuit, th[e] issue [of who decides whether a non-signatory may enforce an arbitration agreement that delegates questions of arbitrability to an arbitrator] presents a "logical conundrum" because "[e]ven with a delegation clause, courts must determine whether a contract exists at all," and "[i]f the nonsignatories are not parties to the contract, then the Plaintiff has no agreement with them." *De Angelis v. Icon Ent. Grp. Inc.*, 364 F. Supp. 3d 787, 796 (S.D. Ohio 2019). But "[w]hether a nonsignatory can enforce the arbitration agreement is a question of the enforceability of the arbitration clause, as to that defendant." *Id*. at 797.

We recently addressed this issue in *Blanton* [*v. Domino's Pizza Franchising, LLC,* 962 F.3d 842 (6th Cir. 2020)]. There, a former employee of a Domino's Pizza franchise sued Domino's Pizza. 962 F.3d at 844. Domino's Pizza moved to compel arbitration under an agreement between the plaintiff and his former employer. *Id*. The plaintiff opposed the motion, "arguing that Domino's couldn't enforce the arbitration agreements because the company hadn't signed the agreements (only their franchises had)." *Id*. But the court concluded that the arbitrator must resolve that issue because the contract delegated questions of arbitrability; the parties agreed that Domino's Pizza's ability to enforce the agreement "involve[d] a 'question of arbitrability.'" *Id*. at 848.

Though the plaintiff in *Blanton* conceded the issue, the court signaled its agreement that a nonsignatory's ability to enforce an arbitration agreement concerned a question of arbitrability, favorably citing three circuit cases so holding: *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014); *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017); and *Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 473–74 (1st Cir. 1989). We follow suit and find that whether [the defendant who did not sign the arbitration agreement containing the delegation clause] can enforce the arbitration agreement against [the plaintiff

who signed the agreement] presents a question of arbitrability that [the plaintiff's] arbitration agreement delegated to an arbitrator.

*Id.* at 507.

Just as in *Swiger*, the question of whether Ford, as a non-signatory to the Sales Contracts, may compel Tri-State and Weiss to arbitrate under the Arbitration Provisions of those contracts is a question of "arbitrability" that has been delegated to the arbitrator under the Delegation Clause.   The Court will therefore compel arbitration and allow the arbitrator to decide whether Ford may compel Tri-State and Weiss to arbitrate.[2] *See*, *e.g.*, *Lyman*, 2022 WL 856393, at *4 (following *Swiger* and concluding that because the arbitration provision of the contract signed by the plaintiff contained a delegation provision, *Swiger* "require[d]" the court to submit to an arbitrator the question of whether a non-signatory to the contract could compel the plaintiff to arbitrate); *Grabowski v. Platepass, LLC*, 2021 WL 1962379, at *4 (N.D. Ill. May 17, 2021) (citing *Swiger* and concluding that "the question of whether a purported nonsignatory can enforce an arbitration agreement concerns a question of arbitrability and, thus, must be decided by the arbitrator").

---

[2] Where, as here, a contract that is subject to the FAA contains a delegation clause, federal law governs whether the clause provides "clear and unmistakable" evidence that the parties agreed to delegate questions of arbitrability. *See Blanton v. Domino's Pizza Franchising, LLC*, 962 F.3d 842, 846-47(6th Cir. 2020).   Likewise, federal law governs whether a non-signatory to such a contract may enforce the delegation clause. *See Swiger, supra* (resolving the question of whether non-party to contract could enforce delegation clause without considering state contract law).

Weiss and Tri-State respond that the Court should decide whether they should be compelled to arbitrate their claims against Ford because they never "agreed that *Ford* could enforce the [D]elegation [C]lause." (Weiss and Tri-State Supp. Br., ECF No. 51, PageID.1790; emphasis added.)  They argue that, instead, they agreed (at most) that the other *parties* to the Sales Contracts – which did not include Ford – could enforce the Delegation Clause.  But *Swiger* makes clear that under these circumstances – *i.e.*, where a plaintiff has signed a contract with an arbitration provision and a delegation clause and where a non-party to the contract seeks to compel the plaintiff to arbitrate claims that bear some relation to the contract – the question is *not* whether the plaintiff specifically intended that the non-party could enforce the delegation clause.  Rather, the sole question is whether the delegation clause clearly and unmistakably delegates questions of arbitrability to the arbitrator.  Because (as described above) the Delegation Clause here does plainly delegate questions of arbitrability to the arbitrator, the arbitrator must decide whether Tri-State's and Weiss' claims against Ford are subject to arbitration even though Ford is not a party to the Sales Contracts. *See Swiger*, 989 F.3d at 507.

## C

Tri-State and Weiss offer one additional argument as to why, notwithstanding the Delegation Clause, the Court, rather than the arbitrator, should decide whether their claims against Ford are subject to arbitration.  They insist that the Court must

make that decision because they have specifically challenged the Delegation Clause. (*See* Weiss and Tri-State Supp. Br., ECF No. 51, PageID.1769.) The Court disagrees.

Tri-State and Weiss are correct that "the court, rather than the arbitrator, must address [a] challenge[]" to a delegation clause in an arbitration provision where the "validity" of that provision "is [specifically] challenged." *Becker*, --- F.4th ---, 2022 WL 2448287, at *2. But that rule does not help them here because they have not challenged the "validity" of the Delegation Clause.

A "validity" challenge contends that a delegation clause that is sufficient on its face to delegate questions of arbitrability to the arbitrator is unenforceable under "generally applicable contract defenses." *Rent-A-Center*, 561 U.S. at 68 (explaining validity challenges to arbitration provisions as a whole). These defenses include "fraud, duress, or unconscionability." *Id.* Thus, in order to appropriately challenge the validity of "a delegation clause, a party must [….] show that the delegation clause is itself unenforceable under some general principle of contract law, such as fraud, duress, or unconscionability." *Tovar v. GC Services Limited Partnership*, 2021 WL 5989944, at *3 (S.D. Cal. Dec. 17, 2021); *Okumu v. SW Corp.*, 2014 WL 12962191, at *3 (C.D. Cal. July 23, 2014) ("An agreement to arbitrate arbitrability, like any

16

agreement to arbitrate, may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability").[3]

Here, while Tri-State and Weiss purport to specifically challenge the "validity" of the Delegation Clause (*see* Weiss and Tri-State Supp. Br., ECF No. 51, PageID.1769), they do not actually mount a "validity" challenge.  They do not contend that there is any general principle of contract law that precludes enforcement of the Delegation Clause.  Instead, they argue that the Delegation Clause is "invalid" because it is too vague to accomplish any delegation at all. (*See id.*: "Here, the delegation clause at issue is invalid and unenforceable because there is no 'clear and unmistakable' evidence that the parties agreed to have an arbitrator decide questions of arbitrability.")  But their argument that the Delegation Clause fails to accomplish any delegation at all is not an attack on the "validity" of that clause.  Indeed, Tri-State and Weiss have not cited any case in which any court has treated an argument that a delegation clause is not clear enough to accomplish any delegation as a challenge to the "validity" of the clause.  Thus, Tri-State and Weiss have not shown that they brought the type of "validity" challenge to the Delegation Clause that would

---

[3] *See also Chatman v. Jimmy Gray Chevrolet, Inc.*, 2016 WL 4975044, at *7 (N.D. Miss. Sept. 12, 2016) (reviewing claim that delegation provision was invalid because it was unconscionable); *Dean v. Douglas Jr. College, Inc.*, 2012 WL 3308370, at *7 (M.D. Tenn. Aug. 13, 2012) (agreeing to hear challenge to validity of delegation clause where plaintiffs argued delegation clause was unconscionable).

permit the Court to decide whether their claims against Ford are subject to arbitration.[4]

## D

Finally, Weiss and Tri-State argue that if the Court allows Ford, as a non-party to the Sales Contracts, to invoke the Delegation Clause, that would lead to the absurd result that *any* non-party to the Sales Contracts could invoke that clause and compel Weiss and Tri-State to arbitrate the claims they assert here. (*See* 6/15/2022 Hr'g Tr., ECF No. 50, PageID.1697.)  In the words of Weiss and Tri-State, there would be no "limiting principle" that would prohibit any "[non-]party to the case" from "com[ing] in and say[ing], 'I think this case should go to arbitration.'" (*Id.*)  The Sixth Circuit confronted the same argument in *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 851-52 (6th Cir. 2020) and rejected it.

One of the plaintiffs in *Blanton* (a man named Derek Piersing) was an employee of a Domino's pizza franchise.  In connection with his employment, he signed a contract with the franchise owner.  Domino's was not a party that contract.

---

[4] For the same reason, Tri-State's and Weiss' effort to distinguish *Swiger* is unpersuasive.  They repeatedly stress that *Swiger* does not control here because the party seeking to preclude enforcement of the delegation clause in that case did not challenge the validity of the clause. (*See* Weiss and Tr-State Supp. Br., ECF No. 51, PageID.1785-1786.)  But Tri-State and Weiss have also failed to present a true "validity" challenge to the Delegation Clause here.  Thus, they are in the same position as the party in *Swiger* that attempted to preclude enforcement of the delegation clause in that case.

The employment contract contained both an arbitration provision and a delegation clause. Piersing later brought suit against Domino's alleging that the company's franchise agreement violated federal antitrust laws. Domino's moved to compel arbitration, and a dispute arose over who should decide whether Piersing's claims were subject to arbitration: the district court or an arbitrator. The Sixth Circuit held that even though Domino's was not a party to Piersing's employment agreement, an arbitrator should decide the question of arbitrability because that agreement incorporated the rules of the American Arbitration Association, and those rules clearly delegated questions of arbitrability to the arbitrator. After reaching that conclusion, the Sixth Circuit addressed and rejected a policy argument by Piersing that mirrors the policy argument by Tri-State and Weiss here:

> Piersing finally invokes a policy concern: that a ruling for Domino's would mean that *anyone* could force him to arbitrate "arbitrability" no matter how frivolous the argument for arbitration. But just last year, the Supreme Court rejected a nearly identical argument about "frivolous motions to compel arbitration." *Henry Schein*, 139 S. Ct. at 531. The Court explained that—whatever the merits of this policy concern—it couldn't "rewrite" the text of the Federal Arbitration Act "simply to accommodate [this] concern." *Id.* And it also noted that the concern was "overstate[d]" because arbitrators can quickly resolve frivolous motions and in some cases even impose sanctions for such motions. *Id.*

*Id.* (emphasis in original). For all of the same reasons, the Court is not persuaded by Weiss' and Tri-State's identical policy concern here.

# IV

"The question here is quite narrow. It's not about the *merits* of the case. It's not even about *whether* the parties have to arbitrate the merits. Instead, it's about *who should decide* whether the parties have to arbitrate the merits." *Id.* at 852 (emphasis in original). And for all of the reasons explained above, the Court concludes that the question of whether Ford may compel Weiss and Tri-State to arbitrate their claims is for an arbitrator to decide. The Court therefore **GRANTS** Ford's motion to compel arbitration (ECF No. 29) and **STAYS** Tri-State's and Weiss' claims against Ford. *See Arabian Motors Group W.L.L. v. Ford Motor Co.*, 19 F.4th 938, (6th Cir. 2021) (holding that pursuant to Section 3 of the FAA, 9 U.S.C. § 3, district court should "stay[] ... federal court action to permit the remaining claims to be arbitrated under the [FAA]"). If an arbitrator ultimately determines that Ford may not compel arbitration, Tri-State and Weiss may file a motion in this action to lift the stay and proceed with the merits of their claims here. If the arbitrator rules that Ford may compel arbitration, then at the conclusion of arbitration proceedings, Ford, Weiss, and/or Tri-State may file a motion to confirm or vacate the arbitrator's award or for other appropriate relief.

   **IT IS SO ORDERED**.

                                        s/Matthew F. Leitman
                                        MATTHEW F. LEITMAN
Dated: July 19, 2022                    UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 19, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126